# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTOINETTE HALL, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:13-cv-01501 |
| v. | ) |
| | ) Judge Mark R. Hornak |
| SENECA AREA EMERGENCY SERVICES, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

This is a case brought pursuant to Title VII, 42 U.S.C. § 2000e-2(a)(1), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 955(a) *et seq*. The Plaintiff, Antoinette Hall, worked as an Emergency Medical Technician ("EMT") for the Defendant, Seneca Area Emergency Services, Inc. ("Seneca"). She alleges that, after she told her employer she was pregnant, her employer reduced her hours, passed her over for full time employment, and ultimately terminated her. The Defendant moved for summary judgment, arguing that (1) Ms. Hall's hours actually increased after she notified her employer of her pregnancy, (2) no full-time EMT opening ever existed during Ms. Hall's employment and she therefore could not have been passed over, and (3) Ms. Hall was terminated during a probationary period for endangering patient welfare and that Ms. Hall has failed to put forth evidence of pretext. Because there are genuine issues of material fact present here that preclude

the entry of judgement in favor of the Defendant, the Court will deny the Motion and set the matter for trial.[1]

## I. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "In considering a motion for summary judgment, a court must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 162 (3d Cir. 2001). "When there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (alteration and internal quotation marks omitted). "To defeat a motion for summary judgment, the nonmoving party must raise more than some metaphysical doubt as to the material facts, and the court must determine that a fair-minded jury could return a verdict for the nonmoving party on the evidence presented." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011) (internal citations, alterations, and quotation marks omitted).

---

[1] In evaluating these Motions, the Court has carefully considered Seneca's Motion for Summary Judgment (ECF No. 39), its Brief in Support (ECF No. 40), its Concise Statement of Material Facts (ECF No. 41) and Appendix thereto (ECF No. 42), its Response to Plaintiff's Counter Statement of Material Facts (ECF No. 55), its Reply Brief (ECF No. 56), and its Supplemental Reply Brief (ECF No. 61). The Court has also considered Hall's Brief in Opposition to the Motion for Summary Judgment (ECF No. 53), her Response to the Concise Statement of Material Facts (ECF No. 43), her Counter Statement of Material Facts (ECF No. 54), and the Appendix to these documents (ECF Nos. 46–52).

## II. BACKGROUND

The essential facts of this case are pretty simple.[2] Antoinette Hall volunteered as an EMT with Seneca for about a month before being hired as a part-time EMT on November 2, 2012. ECF No. 52-2 at ¶ 5. Hall was subject to a 180-day probationary period. *Id.* On November 20, 2012, Hall told Seneca that she was pregnant. After that, according to Hall, Seneca (and its employees) said or did a number of things that may have violated Title VII and the PHRA. For instance, shortly after Hall told Seneca of her pregnancy, Seneca hired another employee, Dave Behrman, as a part-time EMT. ECF No. 47-2 at 4. Seneca then gave Behrman more shifts than it gave Hall: when he was hired in December 2012, Behrman was working two to three shifts per week, *id.* at 6, but a few months later, in March 2013, Behrman was getting scheduled for 4.75 shifts per week while Hall was only being scheduled for 2.5 shifts per week, ECF No. 52-9 at 18–22, and between April 1, 2013 and April 13, 2013, Behrman worked ten shifts and Hall worked only five, *id.* at 23–24. On numerous occasions, Hall asked Assistant Chief Alexander for more shifts but was told that she (Hall) should not be working so many hours when pregnant. ECF No. 50-1 at 8, 9, 14. In the first week of April 2013, Seneca hired two part-time EMT employees, both male. ECF No. 52-2 at 4. Hall was terminated by a letter dated April 15, 2013 from Sheri Carricato stating the reason for termination as "[her] work performance in jeopardizing the welfare of patient care . . . and the other on duty staff member on April 13, 2013." ECF No 52-3.

---

[2] These facts are all gleaned from the Defendant's Appendix to its Concise Statement of Material Facts, *see* ECF No. 42, and Plaintiff's Appendix to its Counter Statement of Material Facts, *see* ECF Nos. 46–52 inclusive.

### III. DISCUSSION

#### A. The PDA

Title VII prohibits employment discrimination based on an individual's sex. *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008) *order clarified*, 543 F.3d 178 (3d Cir. 2008) (citing 42 U.S.C. § 2000e–2(a)).[3] Under the Pregnancy Discrimination Act ("PDA"), discrimination on the basis of pregnancy is likewise prohibited as discrimination based on sex. 42 U.S.C. § 2000e(k). "There is employment discrimination whenever an employee's pregnancy is a motivating factor for the employer's adverse employment decision." *In re Carnegie Ctr. Associates*, 129 F.3d 290, 294 (3d Cir. 1997) (citing 42 U.S.C. § 2000e–2(m)).

To establish a prima facie case of pregnancy discrimination, a plaintiff must allege four elements: (1) she is or was pregnant and that her employer knew she was pregnant; (2) she was qualified for her job; (3) she suffered an adverse employment decision; and (4) there is some nexus between her pregnancy and her employment termination that would permit a fact-finder to infer unlawful discrimination. *Doe*, 527 F.3d at 366. "Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the plaintiff's termination." *In re Carnegie Ctr. Associates*, 129 F.3d at 295 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53 (1981)). "If the defendant articulates such a reason, the plaintiff then must prove that the facially legitimate reason was a pretext for a discriminatory motive." *Id.*

Our Court of Appeals has explained that a plaintiff may defeat a summary judgment motion by "'discrediting the proffered reasons' for [the adverse action]." *Roney v. Allegheny Intermediate Unit*, 568 F. App'x 172, 173 (3d Cir. 2014) (quoting *Fuentes v. Perskie,* 32 F.3d

---

[3] While Ms. Hall brings claims under both the PDA and the PHRA, our Court of Appeals has instructed that claims brought under the PHRA should be "construed consistently with interpretations of Title VII." *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995).

759, 764 (3d Cir. 1994)). "To discredit the employer's proffered reason," a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (quoting *Fuentes*, 32 F.3d at 765).

### B. This Case

The parties agree (both in their briefs, s*ee* ECF Nos. 40, 53, & 56, and on the record at oral argument) that this case hinges on the third or "pretext" stage of the burden-shifting analysis. Seneca argues that it has presented a legitimate, non-discriminatory reason for terminating Ms. Hall (i.e., that Ms. Hall's poor work performance and jeopardizing of patient welfare was the cause of her termination) and that Ms. Hall has failed to adequately demonstrate that such reason was pretextual. *See* ECF No. 40 at 9–10. The Court disagrees. Ms. Hall has pointed to plenty of record evidence from which a rational jury could conclude that Seneca's stated reason for terminating her was pretextual and that her pregnancy was a motivating factor in that termination.

Here are some examples: (1) According to Hall, Chief Allison told Hall that Seneca was considering hiring Behrman as a full-time EMT (instead of Hall) because Hall was pregnant.[4] ECF No. 50-1 at 32. (2) When Hall asked Assistant Chief Alexander for more shifts, Alexander told her that she should not be working so many hours when pregnant. ECF No. 50-1 at 8, 9, 14. (3) In March and April 2013, Behrman, a male EMT who was hired after Hall, was getting nearly twice as many shifts as Hall.[5] ECF No. 52-9 at 18–24. (4) In the first week of April

---

[4] This, if believed, could go beyond "stage three" pretext consideration and also be considered as "smoking gun" evidence that Hall's pregnancy was a substantial motivating factor in at least some employment decisions about her.

[5] Seneca argues that it is entitled to summary judgment on any portion of the claim that relates to the number of hours that Hall was getting while she was still employed, arguing that Hall's hours actually increased after she

5

2013, Seneca hired two part-time EMT employees, both male. ECF No. 52-2 at 4. (5) Chief Allison felt Hall was being "pretty optimistic" to think she could keep working shortly before having her baby. ECF No. 47-1 at 24. Chief Allison said this because she believed that "for most women there becomes a point when one can no longer lift against their body because of the pregnancy, and once you take that ability to lift and have to lift away from your body, that's an extremely difficult thing to do." *Id.*

Seneca's rejoinder to all of this centers on a series of episodes[6] that occurred in late March and early April of 2013, and on statements its witnesses say Hall made about her own limitations. On March 30, 2013, EMT Behrman submitted a written complaint in which he alleged that when Hall arrived for her scheduled shift, "she was holding her stomach stating it was hurting her" and that she then "read the board with the station duties posted on it, and stated that her back was hurting her, and she was not going to perform the duties." ECF No. 42-2, at 44. Seneca says that a few days later, on April 2, 2013, another EMT, Ryan Loveland, submitted a complaint about Hall. Loveland's written complaint stated, among other things, that they (Loveland and Hall) were delayed in responding to a call because they were having a sit-down meal at an Eat'n Park. ECF No. 42-2, at 45. According to Loveland's written complaint, when he later pointed out to Hall that the meal had caused a delay in response time, Hall responded,

---

informed Seneca of her pregnancy. ECF No. 40, at 12–14. But Seneca was unable to explain, in its briefs or on the record at oral argument, the fact, supported by record evidence, that Behrman was receiving twice as many shifts as Hall. So a genuine issue of material fact remains in that respect as well.

[6] These episodes were documented as written complaints. As Seneca admits in its briefs, the EMTs who submitted these written complaints were all specifically instructed by supervisors to "write up" their complaints. See ECF No. 40, at 4. For example, Barb Double's complaint about Hall was written in an email to Sheri Carricato that begins, "Sheri, Here is the write-up you requested." ECF No. 42-2, at 47. Carricato was the office manager who sent the termination letter to Hall on April 15, 2013. ECF No. 50. Why would Carricato instruct these employees to place their complaints in writing? Perhaps it was simply a good sound business practice. On the other hand, was it an effort to build a case? That's unclear. Does it make it more or less likely that Hall's pregnancy and sex were a substantial motivating factor for her termination? That's also unclear. These questions are "such stuff as [jury trials] are made on." W. Shakespeare, The Tempest, act 4, sc. 1.

"Did anyone die? I didn't think so." *Id.* A third EMT, Barb Double, complained about Hall's behavior on April 8, 2013. ECF No 42-2, at 47. The complaint stated that Hall, while on duty, said that she (Hall) was unable to perform a number of required tasks on the job (such as lifting the stretcher) because of her pregnancy. *Id.* Finally, on April 13, 2013, another Seneca employee, Chad Lang, emailed a complaint about Hall in which he wrote that that day, Hall "was complaining of rib pain and that . . . she was barely able to stand the pain." ECF No. 42-2, at 46. Lang further reported that during a call that day Hall was unable to carry a patient down steps and had to ask another EMT to do it for her. *Id.* Lang stated, "I find this unsafe that she is working and not able to lift the [patient] or the stretcher," and asked not to be scheduled to work with her. *Id.* Seneca says that all of these complaints about Hall, and Seneca's resulting concerns about patient welfare, establish that there is no genuine issue of material fact as to why Hall was terminated.[7] ECF No. 40, at 15.

Hall has a number of responses to Seneca's arguments. First, Hall says that Seneca failed to explain the basis for its termination of Hall. ECF No. 53, at 5. The reason listed in the termination letter was that Hall was fired "due to [her] work performance in jeopardizing the welfare of patient care . . . and the other on duty staff member on April 13, 2013." ECF No. 42-2, at 50. But Hall then points out that Assistant Chief Alexander admitted that patient care was not jeopardized on the April 13, 2013 call, and Alexander was unable to point to any other

---

[7] Seneca makes two other arguments in favor of summary judgment. First, it argues that Hall's allegation that she was passed over for full-time employment fails because no full-time position was available during Hall's employment, no matter the statement allegedly made by Chief Allison that Seneca was considering Behrman rather than Hall for a full-time job. ECF No. 40, at 11–12. Hall does not appear to deny this position in her Response in which she argues only that "there exists a genuine issue of material fact whether Seneca denied Hall additional shifts and fired her because of her pregnancy." ECF No. 53, at 4. But it really doesn't matter at this stage whether Hall was passed over for a full-time position because summary judgment is properly denied on other grounds. Second, Seneca says that, because she voluntarily withdrew from the job market, Hall is not entitled to front and back pay damages. ECF No. 40, at 14. But, as the Court explained at oral argument, this argument really goes to damages, not liability, and it would inappropriate to grant summary judgment that basis.

incident in which Hall jeopardized patient welfare. *See* ECF No. 46-1, at 42 & 51. Thus, there is a genuine issue, says Hall, as to why Seneca terminated her employment.

Second, Hall argues that Seneca has provided shifting reasons for her termination. ECF No. 53, at 6. While the original termination letter stated that Hall was fired for jeopardizing patient welfare on a date certain, both Assistant Chief Alexander and Chief Allison provided different reasons for the action during their depositions: Alexander stated that he concluded Hall was "not going to move forward" because he had received "the same complaint from many different employees," ECF No. 46-1, at 42; Chief Allison stated that Hall was terminated because of the "repeated reports from her co-workers that she was refusing to lift patients and assist in moving patients" and therefore "put[ting] the patient in jeopardy." ECF No. 47-1, at 21. Hall says that not only are these explanations evidence of pretext but also they are unsupported by the record. ECF No. 53, at 6–7. She says that the complaints about her actually varied widely in topic, and Chad Lang was the only employee who complained that Hall was refusing to lift patients. *See* ECF No. 52-4 & 52-6.

Third, Hall says that Seneca failed to investigate the complaints about Hall, ECF No. 53, at 8, and provides a slew of record evidence demonstrating that. *See, e.g.*, ECF No. 47-1, at 12, 14–16, & 19; ECF No. 50-1, at 18–19 & 24; ECF No. 50-2, at 12 & 14. Fourth, Hall says that the coworker complaints on which Seneca relied are not supported by the record. ECF No. 53, at 11. Instead, she says the record evidence as noted above is "overflowing with the type of inconsistencies, implausibilities and contradictions that establish pretext." *Id.*

Fifth, Hall says that, although Seneca attempted to explain its reasons for terminating Hall, it failed to offer any explanation for not giving Hall additional shifts while she was still employed, which is another part of her claim. *Id.* at 14–15. Finally, Hall says that there exists record evidence from which a factfinder could conclude that an invidious discriminatory reason

8

was the motivating cause of Seneca's firing her. *Id.* at 15. She points to comments made by Alexander, Allison, and Carricato about their subjective perceptions about Hall's (in)ability to perform her job while pregnant. Since it is undisputed that Allison and Alexander were the decision makers, a reasonable jury could find that Hall's pregnancy motivated their decisions about her employment.

There is no doubt that Seneca has put forth evidence that Ms. Hall was terminated for her poor performance at work and for jeopardizing the safety of patients. But that's not the test here. At the summary judgment stage, the Court is constrained to view all of the record facts (including Ms. Hall's own testimony and the alleged pregnancy-centric comments of her managers) in the light most favorable to Ms. Hall—and to draw all reasonable inferences in her favor—and, considering that standard, Ms. Hall has presented evidence from which a reasonable factfinder *could* rationally find Seneca's proffered legitimate reasons for terminating Hall unworthy of credence, "and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Roney*, 568 F. App'x at 173.

Who is correct? Was it, as Seneca contends, Hall's actual, demonstrated inability to carry out key elements of her critical work that led to the termination of her employment? Or was it, as Hall contends, the application of inaccurate stereotypical views of the abilities of pregnant EMTs that led to that result? Longstanding Circuit precedent says that those are questions for a jury to sort out. These matters, and the others set forth above, as to the why's and wherefore's of the termination of Hall's employment and the reasons for her treatment while employed by Seneca are certainly contested, "genuine" issues, and they are plainly "material," given their centrality to resolution of the legal issues in this case. Under Rule 56, that means that summary judgment may not be granted.

9

## IV. CONCLUSION

For the reasons stated in this Memorandum Opinion, Seneca's Motion for Summary Judgment, ECF No. 39, is denied.

An appropriate Order will follow.

                                           s/ Mark R. Hornak
                                           Mark R. Hornak
                                           United States District Judge

Dated: May 13, 2015
cc:     All counsel of record